## Brown *versus* Foster *et al.*

51    165
40SC 1458

1. The plaintiff agreed, in writing, to do certain work for a steamboat against a day fixed, for a specific sum, and to be paid besides for *extra* work, &c.; one-half the work "payable in promissory notes at three and six months." *Held*, that the payment in promissory notes was for the benefit of the defendant, and he should have given the notes when the work was delivered; not having done so, he was liable to pay immediately in money.

2. The agreement was not for a credit, but gave defendant the option to pay in money or in notes at three and six months; by not giving the notes, he elected to pay in money, and therefore a suit for the whole was not premature, because brought before the expiration of the six months.

3. The work having been completed and accepted before suit brought, it was admissible to sue in *indebitatus assumpsit*, and give the special contract in evidence, not as proof of the promise, but a rule to measure the damages for its breach.

4. When work stipulated for by an unsealed written contract has been completed, there may be a recovery in *indebitatus assumpsit* for its value, although not finished within the time agreed upon. So far as performance is defective in time, it admits of compensation.

5. Where there had been delay in completing a steamboat in the time fixed, the measure of damages would be, not what it would cost the party to hire another boat for the time, but what would be the *ordinary* hire of such boat; and in case of defective work, what would be the cost of repairs, &c., and the ordinary hire of a boat during the time necessary to make them.

ERROR to the Common Pleas of *Allegheny county*.

In the court below this was an action of *assumpsit* by A. W. Foster and A. W. Foster, Jr., trading as Foster & Co., against William H. Brown.

The foundation of the plaintiffs' claim was the following paper:—

"Pittsburgh, July 5th 1864.

"To W. H. Brown:—We agree to take the machinery of Rowena, as it now lies in a flat on Monongahela river, make one new boiler, new branches for mud receiver, stand-pipe and steam drum, two new sheets in mud receiver, and lengthen it to suit the boilers, fire bed, breeching, chimneys and all wrought-iron work complete (not including repairs to old boilers), also nigger boiler complete; make new shaft, ten and one-half inches at journals, twenty-seven feet long, four flanges, collars, cranks, wrists, pillow blocks, cams and frames and brasses; also lengthen old pitman stubs and make new pitman, new throttle and fire-front and grate bars, and set work up on boat complete, for ninety-four hundred and seventy-five dollars ($9475). (*Any repairs and materials furnished, preparatory to setting up, to be charged at customary prices.*)

"One-half payable during the progress of the work, and balance in promissory notes, at three and six months.

"Work to be done by October 1st 1864.

"(Signed)      "FOSTER & Co.
               "WM. H. BROWN."

[Brown *v.* Foster.]

The work was not done until December 15th 1864. There was evidence that the defendant did not bring the hull of his boat to the wharf to receive the machinery till too late to complete it by October; and that plaintiffs were hindered by the maker of the pipe who was employed by defendant, with which plaintiffs had nothing to do.

The defendant paid $5072 during the progress of the work. The plaintiffs in their bill of particulars claimed $3456 beyond the sum specifically mentioned in the contract, for " repairs and materials furnished preparatory to setting up."

The main subject of controversy was the construction of the agreement, especially the part in parentheses.

On the trial the plaintiffs offered,—1. The paper of July 5th 1864, above mentioned.

2. Evidence as to certain portions of the machinery not specifically mentioned in the agreement; both of which were objected to by the defendant, but received by the court and exceptions noted.

3. Defendant offered to prove what was understood at the making of the contract, as to what were the materials and repairs to be furnished preparatory to setting up the work—rejected by the court and exceptions noted.

The defendant also submitted the following points:—

1. That under the proper construction of the contract in evidence, the plaintiffs were bound to take the old machinery of the Rowena, make the new parts, and set it up complete for the round price mentioned, and were only entitled to charge for extra work rendered necessary by the condition of the boat receiving the machinery, in setting up the said machinery.

2. That the proper construction of the parenthetical clause of the contract in regard to " repairs and materials," authorizes the plaintiffs to charge outside the contract price, only for repairs and materials furnished strictly as preparatory to setting up the machinery when complete and ready to be set up, and does not authorize them to charge for fitting up and repairing the old machinery, except as to repairs done to the old boilers.

4. That plaintiffs under no aspect of this case can recover for the deferred payments, the credit allowed not having elapsed from the time the work was complete.

5. That the proper measure of damages under the defendant's pleas is, what it would have cost the defendant to hire such a boat as the " Bee" during the time plaintiffs' work was in default; also the time lost, and cost of repairs done on account of defects in plaintiffs' work.

6. If the court refuse to charge as requested in the last point, they are requested to charge that the defendant is entitled to recover from the plaintiffs, as damages for default in not having

[Brown *v.* Foster.]

the boat ready, what the jury may believe the boat could have earned during the time, making allowance for expense of running, insurance and wear and tear of boat.

To which the court (Mellon, A. J.) answered:—

"1. Answered in the negative. The contract provides for payment beyond the named sum, for repairs and materials necessary to setting up the machinery. It was the old machinery of the Rowena that was in contemplation; new parts were to be supplied, and alterations to be made, and in setting them up complete, certain repairs of the old machinery, not foreseen, might be necessary; and I take it, that these repairs, and the materials therefor, as well as the repairs and materials necessary to adjust the machinery to the new boat, were covered by the contract.

"2. Answered in the negative. The term complete applies to the machinery set up. The work is to be set up complete; all the new work and alterations of the old work stipulated for are to be done under the named price, and of course no repairs on them can be charged or allowed; but other parts are to be adjusted, and all to be set up complete, and in this and setting it up on the new boat, repairs and materials may become necessary, which are within the scope of the contract.

"4. It is true the defendant's refusal to comply with the contract as to deferred payments should have been averred specially in declaration, but under our own rules and in view of the affidavit of defence, we must answer this point in the negative.

"5. This point is also answered in the negative. The measure of damages in such case is the ordinary hire of such boat for the time in question—the time plaintiffs were in default—not specially what it would have cost defendant, but the ordinary hire of such boat for the time. And as to defective machinery put in by plaintiffs, the measure would be the cost of repairs or replacement of it, with the hire or rent of the boat for the time necessary to such repairs or replacement.

"6. The answer to the foregoing covers this point."

Charge of the court: "The answers to the points proposed by the learned counsel on both sides will give the jury a pretty full explanation of the law involved in the case.

"The written contract between the parties, which is in evidence, is to be duly regarded, and have full force in every particular. Viewing this contract in the light of the circumstances under which it was made, we find Mr. Brown, the defendant, with the machinery of an old boat. He wished to have it converted into machinery for a new boat of different character and dimensions. To this end part of this old machinery required removal from the flat in the river where it lay, to the new boat, and parts requiring repairs or alterations to the shop of a machinist, and thence to

[Brown *v.* Foster.]

the new boat, and then, together with new parts to be supplied, it was to be set up complete on the new boat.

" In view of this, the present plaintiffs (machinists) proposed and undertook, for the sum named in this contract, to take the old machinery as it lay in the flat and alter the *mud receiver* by *lengthening it to suit* the boilers, and also *lengthening* the *pitman straps*, and to make the following items *new*, viz.: one boiler, branches for mud receiver, stand-pipe and *steam drum*, two sheets in mud receiver, fire bed, breeching and chimneys, nigger boiler, shaft ten and one-half inches at journals and twenty-seven inches long, four flanges, collars, cranks, wrists, pillow blocks, cams and frames and brasses, one pitman, throttle and fire front, and grate bars; and all wrought-iron work complete, excepting repairs to old boilers; and to set all up complete on the new boat, for the price or sum stipulated; and besides this stipulated or named sum, any repairs and materials outside of the foregoing work which might be required and done preparatory to setting it up complete on the new boat, were to be charged in addition by the plaintiff at ordinary prices.

" This is my reading of the contract; and accordingly any new items of machinery furnished (if any), and not enumerated to be done under the named aggregate sum, or any actual alterations of old machinery wanting and not so enumerated or provided for in the article, together with all repairs (except on plaintiff's own work) preparatory to setting up the entire machinery complete on the new boat, would be the subject of charge, at ordinary prices. You will remember, however, that all wrought-iron work is included in the named or stipulated price. Effect could not be given to the exception, 'repairs to old boilers,' upon any other interpretation. The plaintiffs stipulate to do all wrought-iron work, *except repairs to old boilers*, and certain specified new work and alterations of old work for a specific sum, and be allowed, in addition, at ordinary prices, for repairs and materials preparatory to setting it up.

" You will apply the evidence to this interpretation, taking the stipulated sum and adding to it any items proved or admitted to have been done preparatory to setting it up, and from the amount, deducting the payments, you will find the amount which, irrespective of the defence, would be owing to the plaintiffs. In regard to interest, you should have regard to the times at which deferred payments would fall due. Then consider defendant's defence in regard to the alleged damages sustained by the delay in not receiving his boat within the stipulated time; and also in regard to alleged defective work of the plaintiffs. Having so ascertained the amount of plaintiffs' claim and of defendant's set-off or counter claim, the difference will be your verdict for the

[Brown v. Foster.]

one or the other, as you may find the facts. The facts, of course, are entirely within your province to determine."

To the foregoing charge and answers to the respective points, both parties except.

The jury found for plaintiffs $5709.90.

In this court the defendant assigned for error: The receiving of the evidence of plaintiff above mentioned, and rejecting the evidence offered by the defendant; also, in refusing the defendant's first, second, fourth and sixth points, and in charging the jury that,

" The contract provides for payment beyond the named sum for repairs and materials necessary to setting up the machinery. It was the old machinery of the Rowena that was in contemplation. New parts were to be supplied, and alterations made, and, in setting them up complete, certain repairs of the old machinery, not foreseen, might be necessary ; and I take it that these repairs, and the materials therefor, as well as the repairs and materials necessary to adjust the machinery to the new boat, was covered by the contract."

*H. Burgwin* and *R. Woods*, for plaintiff in error.—This was a special contract for work to be done by a certain day; to be paid for, half during its progress, the remainder by notes at three and six months. The work was not done at the day—by whose default matters not. Plaintiffs were permitted to give the agreement in evidence under the common counts, and to recover both deferred payments, before the time had elapsed from finishing the work ; the latter payment before the expiration of the time from the day fixed for finishing the work ; without demand and refusal of notes for the deferred payments. This was wrong: Eckel v. Murphy, 3 Harris 488 ; Girard v. Taggart, 5 S. & R. 19 ; Mussen v. Price, 4 East 147.

The construction of the contract is this :—Brown had machinery in a flat which he wished *set up* on another. Foster proposes to *take* the machinery, make certain alterations and new parts, and *set the work up complete* on the other boat. Foster, thinking that, when he comes to *set up* the work, there may be some work to be done to accommodate the work and boat to each other, therefore adds a clause to be paid for such additional work. If the terms of the contract are ambiguous, the construction should lean in favour of Brown, Foster having written it. The defendant in error gives too broad a meaning to the word " preparatory." It was work *preparatory* to setting up the machinery when ready to be set up ; not work preparing the machinery for being set up. The contract provided for " repairs and materials ;" if the parties designed what is contended for by Foster, they would have said " *other* repairs."

Barnhart *v.* Riddle, 5 Casey 92, justifies the offer to prove the proper application of the terms in the parenthesis.

The true measure of Brown's damages for delay was what his boat would have earned, less expense of running, &c.

*Smith & Harper,* for defendants in error.—The contract was given in evidence mainly to fix the price of certain parts of the work. The whole work was complete; this was an adequate consideration to raise a promise. When a special contract remains executory, the party must declare specially; when executed, he may declare generally: Brooke *v.* White, 1 Bos. & Pul. 330; Alcorn *v.* Westbrook, 1 Wils. 115; Algeo *v.* Algeo, 10 S. & R. 235; Harris *v.* Liggett, 1 W. & S. 301. The jury found that the delay was caused by Brown; therefore the Fosters were not bound to postpone bringing suit accordingly. The notes not having been tendered, Fosters could bring their suit at once, and recover on the common counts. In the cases cited for plaintiff in error, the claim was certain and determined: here it was uncertain till the work was done.

The opinion of the court was delivered, January 8th 1866, by

STRONG, J.—The work which the plaintiff undertook by special contract to perform had been completed and accepted by the defendant before the action was brought. It was therefore admissible for the plaintiff to sue in *indebitatus assumpsit,* and give in evidence the special contract, not as proof of the promise declared on, but as furnishing a rule by which the damages for its breach were to be measured. And the right of the plaintiff to declare generally, and use the special contract as evidence, was not affected by the fact that the work was not completed until after the day specified for its completion. However anomalous it may seem that the law should imply a promise when there is an express one, it is no longer to be doubted that when the work stipulated to be done by an unsealed written contract has been fully completed, there may be a recovery in general *indebitatus assumpsit* for its value, though there was a failure to finish it within the time agreed upon. Time is generally regarded as not of the essence of the contract, and so far as the performance is defective in time, it admits of compensation: Harris *v.* Liggett, 1 W. & S. 301. The written memorandum of agreement between these parties was therefore admissible in evidence, and the first assignment of error is not sustained.

The most important questions raised by the record relate to the construction given by the court to the special contract. The defendant contended that under its provisions the plaintiffs could only charge beyond the sum of $9475, for repairs and materials furnished strictly as preparatory to setting up the machinery,

[Brown *v.* Foster.]

when complete and ready to be set up, and not for fitting up and repairing the old machinery, except so far as repairs were made to the old boilers. He insisted that all which could properly be regarded as extra work was such as was rendered necessary for setting up the machinery by the condition of the boat presented by him for its reception. The court, however, was of opinion, and so instructed the jury, that repairs to the old machinery, and materials furnished therefor, were not included in the work and materials, for which the $9575 were agreed to be paid, and that they constituted a proper basis for an additional claim. We think the court construed the contract correctly. Looking at its subject-matter and its phraseology, to which alone can we resort in ascertaining the intention of the parties, it admits of no other construction. The principal subject was the construction of new work for parts of the machinery of an old boat and setting up the work complete in a new boat. No part of the work for which the stipulated sum was agreed to be paid consisted of repairs to the old machinery, with perhaps a single exception. In the enumeration of things to be done by the plaintiffs not an item refers to repairs, unless it be that the wrought-iron work was to be made complete, and even from that were excepted repairs to old boilers. Everything else was new work, and the contract was that the work should be set up on boat complete. For that work thus described and setting it up complete, the defendant agreed to pay $9475. True, the work could not have been set up without also setting up the old machinery, or such parts of it as were not supplied or displaced by the new work. But it may have been possible to set it up complete without making any repairs to the old parts, and even if such repairs were indispensable to setting up the new work, they could not have been foreseen, and therefore they could not have been definitely provided for. Or if they could, had it been the intention of the parties that the old machinery should be repaired as well as the new work done for the stipulated sum, the enumeration of things to be done would have included repairs, for the parties undertook an enumeration. The plaintiffs engaged to take the old machinery and make new parts for it adapted to it in size and plan. It was their own work—their additions—that they undertook should be complete, not all the machinery of the new boat.

It is also manifest from the subsequent clause in the contract that repairs to the old machinery were not understood to be included in the work for which the stipulated price was agreed to be paid. That clause declared that any repairs and materials furnished preparatory to setting up were to be charged at customary prices. The parties had previously arranged for the new work and for setting it up with the machinery. Having done

[Brown *v.* Foster.]

that, they came to the subject of repairs, and materials furnished other than those before enumerated. For these the customary charge was to be made. But what repairs? Not such as might be done to the boat, for the new boat was not the subject of the contract. And not merely the work necessary to fit the new and the old machinery to the new boat, for that cannot be called repairs. They must therefore have been repairs to the old machinery made before the work was set up. If not so—if the preparatory repairs were, as the defendant insists, only such as might be rendered necessary by the condition of the new boat, presented for the reception of the machinery—it follows that no provision whatever was made for repairs to the old machinery, either directly or indirectly, for the contract was not to take the old machinery and set it up complete, but to take it, make new work for it and set up the work complete.

The second, third, fourth and fifth assignments of error are therefore not sustained. The sixth raises the question whether the action was prematurely brought. The provision in the special contract was that the work was to be done by October 1st 1864, and that one-half of the sum due the plaintiffs was payable during the progress of the work, and the balance in promissory notes at three and six months. The contract was dated July 5th 1864, and this suit was brought in March 1865. It is argued that by the special contract a credit was given until three and six months had elapsed after the completion of the work, and the defendant asked the court to instruct the jury " that the plaintiffs under no aspect of the case could recover for the deferred payments, the credit allowed not having elapsed from the time the work was complete." The court declined to give such instruction, remarking that though it was true the defendant's refusal to comply with the contract as to the deferred payments should have been averred specially in the declaration, yet under their rules and in view of the affidavit of defence they must answer the point in the negative. We have not before us the rules or the affidavit of defence to which the court referred, but independently of them we think the instruction asked for should not have been given. The action was not brought upon the special contract. It was *indebitatus assumpsit* for work and labour done and materials furnished. When the plaintiffs had finished their work and delivered it to the defendant, the law raised a promise on his part to pay what it was reasonably worth, and what that was the parties had fixed in part by their special agreement. It is true the time of payment of part of the price was provided for, and the mode of payment of the remainder. The privilege of paying in promissory notes at three and six months was for the benefit of the defendant. It was one which he could waive or not at his pleasure. To avail himself of it he should have given the notes when the work was

[Brown *v*. Foster.]

delivered.   It was only on this condition that he could escape the obligation to make immediate payment in money.   The giving of the notes was the price of the indulgence and a condition precedent to his obtaining time.   But the defendant never tendered the notes, and has stoutly resisted his liability to pay at all.

There are two decisions of the English courts which seem to hold that an agreement, such as was made in this case, must be treated as an absolute agreement to give credit until the expiration of the time when the notes to be given in payment of the debt themselves become payable.   The first is Mussen *v*. Price, 4 East 147, in which it was held by a divided court, that where goods were sold upon a contract that the vendee was to pay for them at the end of three months, by a bill of two months, the contract was for a credit of five months, and therefore that *assumpsit* for goods sold and delivered could not be brought at the end of three months, upon the neglect of the vendee to give his bill at two months, the remedy being by special action on the case for damages for the breach of the contract in not giving such bill.   The second case is Helps *v*. Winterbottom, 2 B. & Ad. 431, in which it was ruled that where goods were sold at six months' credit, payment to be then made by a bill at two or three months at the purchaser's option, it was in effect a nine months' credit, and consequently that an action for goods sold and delivered, commenced within six years from the end of the nine months, was in time to save the Statute of Limitations.   In this case as in the former the court was divided, and the remedy of the vendor was said to be by special action on the case for breach of the contract to give the bill.   But in both cases the right of the vendor to sue at once, on the purchaser's failure to give the bill, was admitted.   The nature of his action, it was said, must be that of a special count upon the case for a breach of the promise to give the bill.   There is, however, no substantial difference between such an action, and an action for goods sold and delivered, treating the credit at an end. In both the price of the goods would be the measure of damages. Nothing less would compensate the vendor, unless it may be that in the special action the price of the goods, discounting the interest for the time the bill had to run, is the proper measure.   But the stipulation for a bill is for the advantage of the vendor, as well as a proffered benefit to the vendee.   It contemplates putting the debt into a form which enables the vendor to use it, and a bill at three months is more valuable to him, than an unwritten promise to pay the amount secured by the bill, at the expiration of the same time.   If, then, in his special action on the case for breach of the contract to give the bill, he is to be compensated, he is entitled to more than the sum for which the bill was agreed to be drawn, after discounting the interest for the time it would have had to run.   And if this is so, the doctrine held in Mussen *v*.

[Brown *v*. Foster.]

Price and Helps *v*. Winterbottom amounts to little, if anything, more than to prescribe a different form of action, leaving to the vendor a substantial right to the price of the goods sold, when the vendee makes default in giving the note or·bill.

In Mussen *v*. Price, Lord Ellenborough did not concur with the majority of the court; and in Helps *v*. Winterbottom, Baron Parke doubted, adding that he should rather be disposed to say the real contract was to pay in a bill at the end of six months, and that if no bill was given at that time the agreement was broken, and the credit was then at an end.    To us this appears to be the reasonable construction of such a contract, and so it was ruled by Lord Ellenborough at Nisi Prius, in Nickson *v*. Jepson, 2 Starkie 202, fourteen years after Mussen *v*. Price was decided. In that case it appeared that when the goods were ordered, the vendor agreed to give three months' credit, and at the end of that time take the purchaser's bill for three months more, if he wished for further time.

The defendant did not give his bill, and an action for goods sold and delivered was brought before the expiration of six months from the purchase, and it was sustained.    Lord Ellenborough held that the action was not premature ; that it was incumbent upon the defendant to give the bill if he wished to avail himself of the indulgence offered to him.    So we think that in the present case it was not so much an agreement for a credit, as it was giving an option to the defendant to pay in money on the completion of the work, or in notes at three and six months.    By not giving the notes at that time, he elected to pay in money.    The sixth assignment of error must therefore fail.

It remains only to consider the seventh assignment.    The defendant asked the court to charge the jury that the proper measure of the damage sustained by him from the plaintiff's default in not completing the work within the time stipulated was what it would have cost him to hire such a boat as the "Bee," during the time the plaintiff's work was in default ; also the time lost, and cost of repairs done on account of defects in the plaintiffs' work.    Or if the court should refuse so to charge, that they should instruct the jury the defendant was entitled to recover from the plaintiffs, as damages for default in not having the boat ready, what the jury might believe the boat could have earned during the time, making allowance for expense of running, insurance and wear and tear of boat.    These points the court answered in the negative, adding that the measure of damage in such a case is the ordinary hire of such a boat for the time in question, the time plaintiffs were in default; not specially what it would have cost defendant, but the ordinary hire of such boat for the time.    And as to defective machinery put in by the plaintiffs, that the measure would be the cost of repairs or replacement of it, with the hire or

[Brown *v.* Foster.]

rent of the boat for the time necessary to such repairs or replacement. Of this the defendant now complains, but we think without reason. The instruction was in all respects quite as favourable to him as any that could have been given. What the boat could have earned, had there been no default on the part of the plaintiffs, was quite inadmissible as a standard by which to measure the damages.

The judgment is affirmed.